# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
Assigned on Briefs January 7, 2003

### STATE OF TENNESSEE v. ERIC GENE ISLAND

**Direct Appeal from the Circuit Court for Obion County**
**No. 1-273     William B. Acree, Jr., Judge**

---

**No. W2002-00816-CCA-R3-CD  - Filed March 14, 2003**

---

An Obion County jury convicted the defendant, Eric Gene Island,[1] of attempt to commit robbery and conspiracy to commit robbery. The trial court sentenced him to concurrent sentences of four years for each conviction. On direct appeal, the defendant contends: (1) trial counsel was ineffective in failing to investigate the case and secure witnesses; and (2) he was denied his right to testify at trial. Upon reviewing the record, we conclude the failure to conduct a <u>Momon</u> hearing to determine whether the defendant personally waived his right to testify was plain error. Therefore, we remand the case to the trial court for a full hearing on the issue.

### Tenn. R. App. P. 3 Appeal as of Right; Remanded to the Circuit Court
### for Further Proceedings

JOE G. RILEY, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and ALAN E. GLENN, JJ., joined.

James T. Powell, Union City, Tennessee (on appeal); Joseph P. Atnip, District Public Defender; and William K. Randolph, Assistant District Public Defender (at trial), for the appellant, Eric Gene Island.

Paul G. Summers, Attorney General and Reporter; P. Robin Dixon, Jr., Assistant Attorney General; Thomas A. Thomas, District Attorney General; and Kevin David McAlpin, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

We recite the following facts to place the issues in proper perspective. On May 30, 2001, between 12:00 p.m. and 12:30 p.m., two men wearing "bandannas" over their faces entered the Dollar General Store in Obion, Tennessee. Bobby White, a customer, testified the taller of the two

---

[1] In other pleadings, the defendant's name appears as "Eric Eugene Island." However, in accordance with this court's practice, we list the defendant's name as it appears on the indictments.

men pointed a gun at the cashier's head and demanded money from the cash register, while the other man stood at the door.

Autumn Pollack, the cashier, testified she attempted to open the cash register, but failed to do so because she did not have a key. The man, who pointed the gun at her, pushed several buttons on the register in an attempt to open it. When he also failed to open the register, the two masked men ran out of the store.

Frederick Sanders, who pled guilty to the attempted robbery of the store, testified the defendant, Michael Carr, and a female picked him up at his residence in Union City approximately forty minutes prior to the robbery. The defendant was driving the vehicle, which, according to Sanders, stalled on several occasions. Sanders stated that while in the vehicle, the defendant and Carr had a conversation regarding the robbery, and then Carr and Sanders discussed robbing the store.

Sanders testified that approximately six to seven minutes prior to the robbery, the defendant stopped the vehicle beside the store. Carr exited the vehicle and entered the store. When Carr returned, he stated there was money inside the store. Sanders testified Carr then gave him a gun. He stated the defendant did not see the gun change hands, and that no conversations regarding the gun occurred while they were in the vehicle. Sanders testified he wrapped a shirt around his face, and he and Carr entered the store. He further stated he did not know where the vehicle would be parked when he and Carr ran out of the store. However, he maintained everyone in the vehicle knew about the robbery prior to its occurrence. Sanders testified that after the attempted robbery, he and Carr found the defendant's vehicle parked on a narrow street. The defendant then drove them to the residence of Carr's grandmother.

James Cooley testified that on May 30th at approximately 12:30 p.m., while stopped at an intersection near the store, he saw two people wearing masks run out of the store. He stated he followed the two people to a vehicle parked two streets from the store; the back door on the passenger side of the vehicle was open. Cooley testified he saw the two people, who were still wearing their masks, run through a yard and enter the vehicle. The vehicle sped away before the two people could shut the door. Cooley got the license tag number of the vehicle before it sped away.

Deputy William Sanford testified that at approximately 12:30 p.m., he received a telephone call from Cooley regarding the robbery. He stated that based on Cooley's description of the vehicle and the license tag number, he and other officers located the vehicle at the residence of the defendant's mother. The defendant's mother granted the officers consent to search the residence. The officer testified that upon finding clothing matching the description of the clothing worn by the two robbers, he arrested the defendant and others present at the residence. While at the police station, the defendant gave an oral statement maintaining he had no knowledge of the attempted robbery.

Michael Carr, the defendant's nephew, pled guilty to the attempted robbery and testified for the defense at trial. He stated that on the morning of May 30th, he went with the defendant to a friend's house in Obion. Carr testified that while in Obion, he and Sanders exited the vehicle in

order to find his friend, "Ricco," but were unable to locate him. He and Sanders then attempted to rob the store. Carr testified he and Sanders ran out of the store toward a park, taking off their masks as they were running. Carr stated that while they were running, they saw the defendant drive by and waved for him to stop. While on their way to the defendant's residence, Carr told the defendant about the robbery and threw the gun out of the window. Carr testified he did not discuss the robbery with the defendant prior to its occurrence.

Timothy Taylor testified he saw the defendant's vehicle parked at an intersection approximately five blocks from the store. Taylor stated the vehicle's hood was up, and the vehicle was smoking. He testified he wrapped duct tape around the oil filter to seal a hole, put oil in the vehicle, and followed the defendant to his residence.

Taylor testified that as they were leaving, two men ran up to the car and asked the defendant for a ride. When Taylor asked the defendant if anything was wrong, the defendant replied, "No, I'm just gonna give these guys a ride." Taylor stated the defendant did not have any problems with his vehicle while driving to his residence.

On rebuttal, Deputy Sanford testified he arrived at the Island residence at 12:52 p.m. and did not see Taylor at the residence. He stated the defendant did not tell him about his problems with the oil filter, and that he had never heard of Taylor until the day of trial.

The jury convicted the defendant of attempt to commit robbery and conspiracy to commit robbery. The trial court sentenced him to four years for each conviction and ordered the sentences to be served concurrently.

## I. INEFFECTIVE ASSISTANCE OF COUNSEL

The defendant contends trial counsel was ineffective in failing to adequately investigate potential witnesses and adequately prepare for trial. We disagree.

### A. Trial Proceedings

During trial, the defense rested its case, and the trial court began to explain to the jury the purpose of closing arguments. Trial counsel then requested a bench conference during which he explained the defendant had just informed him of additional witnesses he wanted to testify. Trial counsel told the trial court this was the first time he had heard of these witnesses and did not know what their testimony would be. The trial court allowed trial counsel to speak to the witnesses.

During a jury-out proceeding, trial counsel stated the testimony of one of the witnesses was "extremely probative" to the case. Trial counsel explained that he and the defendant previously discussed the witness, but he was unaware that the defendant had located the witness until then. Trial counsel stated this was the result of an "absolute breakdown in communication" between him and the defendant. The trial court allowed the defense to reopen its proof. Trial counsel then called Timothy Taylor to the stand, and upon the conclusion of his testimony, the defense again rested its case.

-3-

## B.  Hearing on Motion for New Trial

Different counsel was appointed to represent the defendant prior to the filing of the motion for new trial.  During the hearing on the motion for new trial, the defendant testified he told trial counsel about Timothy Taylor a "couple of months" prior to trial.  The defendant stated that although trial counsel told him to ensure Taylor was present at trial, trial counsel never asked him about Taylor during the trial.

The defendant testified that if trial counsel had asked him about potential witnesses prior to trial, he would have requested his mother, Kristy Ward, and Steven Kemp be called as witnesses.  The defendant acknowledged that Ward was a co-defendant, who was tried along with him.  He stated his mother would have testified she saw Taylor follow him into the driveway, and that she was going to take the defendant to the store to buy an oil filter for the vehicle when the police arrived.  According to the defendant, his mother would have also testified that Carr told her and Ward about the robbery.  The defendant stated trial counsel was aware of her testimony, but he did not call her to testify at trial, even though she was present.

The defendant stated he also wanted to call De'Lakeenah Anderson, who would have testified that she saw the defendant in Dyersburg on the morning of the robbery.  He further stated he wanted to call Danny Bishop, who was aware of the problems he had with his vehicle.  The defendant testified he identified for trial counsel prior to trial all witnesses who could have possibly provided exculpatory evidence.  He maintained trial counsel never investigated the witnesses and did not speak to Taylor prior to the day of trial.

Trial counsel testified the defendant missed an appointment with him approximately one week before trial; however, he met with the defendant the Friday before trial.  He stated the defendant never gave him a list of witnesses to call, but the defendant told him about Taylor.  The defendant did not have Taylor's address or telephone number but told trial counsel he would bring Taylor to the trial.  Trial counsel stated he did not realize Taylor was present until he had rested his case.  Trial counsel spoke to Taylor in the hallway in order to ascertain what his testimony would be and then successfully petitioned the trial court to reopen the proof.

Trial counsel testified that prior to closing his proof, the defendant never indicated he had other witnesses.  He stated that after he closed his proof, he spoke to the defendant about his mother, and they mutually agreed she would not testify.

## C.  Trial Court's Findings

In denying the defendant's motion for new trial, the trial court found trial counsel investigated the defendant's claims as best as he could considering the lack of cooperation by the defendant, who failed to attend an appointment and failed to provide names of witnesses in a timely manner. The trial court further found the witnesses' testimony would not have affected the outcome of the trial.  The trial court found trial counsel was not at fault in failing to call these witnesses at trial.  Finally, it found the stage of trial during which Taylor testified did not adversely affect the defendant or the outcome of the trial.

**D. Standard of Review Regarding Ineffective Assistance of Counsel**

When a claim of ineffective assistance of counsel is made under the Sixth Amendment, the burden is upon the complaining party to show (1) that counsel's performance was deficient, and (2) the deficiency was prejudicial in terms of rendering a reasonable probability that the result of the trial was unreliable or the proceedings fundamentally unfair. *See* Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674 (1984). In Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975), our supreme court required that the services be rendered within the range of competence demanded of attorneys in criminal cases.

It is unnecessary for a court to address deficiency and prejudice in any particular order, or even to address both if the petitioner makes an insufficient showing on either. Strickland, 466 U.S. at 697, 104 S. Ct. at 2069. In order to establish prejudice, the petitioner must establish a "reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." State v. Burns, 6 S.W.3d 453, 463 (Tenn. 1999) (quoting Strickland, 466 U.S. at 694, 104 S. Ct. at 2068) (citations omitted).

We review the trial court's factual findings underlying a claim of ineffective assistance of counsel under a *de novo* standard with a presumption that those findings are correct – unless the preponderance of the evidence establishes otherwise. Burns, 6 S.W.3d at 461. However, the trial court's conclusions of law –  such as whether counsel's performance was deficient or whether that deficiency was prejudicial –  are reviewed under a *de novo* standard with no presumption of correctness. Fields v. State, 40 S.W.3d 450, 457 (Tenn. 2001) (citations omitted).

**E. Analysis**

The defendant's primary contention is that he provided trial counsel with Timothy Taylor's name well in advance of trial, and that trial counsel did not attempt to locate Taylor in order to discover the nature of his testimony. The defendant submits the stage of the trial during which Taylor testified created a prejudicial effect.

The trial court permitted trial counsel to reopen his proof and call Taylor as a witness. When Taylor testified, the parties had not yet begun closing arguments, and the jury had not yet begun to deliberate. We agree with the trial court's ruling that the defendant has failed to provide any evidence of prejudice with regard to this witness.

As to potential witnesses Steven Kemp, De'Lakeenah Anderson, and Danny Bishop, none of these persons testified as to what his or her testimony would have been. Accordingly, the defendant has failed to establish prejudice. *See* Black v. State, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990). As to co-defendant Kristy Ward, she elected not to testify at their joint trial, and the defendant could not have forced her to do so. As to defendant's mother, she did testify at the sentencing hearing and gave details of what her trial testimony would have been. The trial court not only concluded that trial counsel was not to blame for failing to call her, but also concluded that her

testimony would not have affected the outcome of the trial. The evidence does not preponderate against the findings of the trial court. This issue is without merit.

## II. DEFENDANT'S RIGHT TO TESTIFY

The defendant contends he was denied his constitutional right to testify at trial. Rather, he submits the decision not to testify was a unilateral decision made by trial counsel.

### A. Trial Proceedings

Our review of the record does not reveal a written waiver of the defendant's right to testify, nor a jury-out hearing prior to the conclusion of the proof in which the defendant waived his right to testify. After jury deliberations had begun, trial counsel requested a jury-out hearing because the defendant insisted he had other witnesses he wanted to testify. The defendant testified in order to identify these witnesses and explain the substance of their testimony.

The defendant also testified that he was "supposed to take the stand," even though trial counsel advised him against it. He stated that after Michael Carr testified, he and trial counsel tentatively decided he would not testify. He stated, however, that he explained to trial counsel he wanted to testify and thought they would discuss the issue again prior to the end of the proof.

The defendant acknowledged he had a prior conviction for aggravated burglary, and that trial counsel informed him the prior conviction would be admitted if he testified. The defendant testified he had "nothing to hide." Trial counsel and the defendant then engaged in the following colloquy:

Q: But yesterday, you didn't want the jury to hear about it, did you?

A: That's what you said, . . . and you advised me not to. I never said that I didn't want to take the stand. You just advised me not to.

The trial court did not allow trial counsel to reopen the evidence because the jury had already begun deliberating. There was no further discussion at that time concerning the defendant's desire to testify at trial.

### B. Hearing on Motion for New Trial

The defendant did not expressly raise in his motion for new trial the issue of his not testifying at trial. During the hearing on the motion for new trial, trial counsel testified the defendant mentioned taking the stand, but after discussing the issue, he and the defendant decided against it. Trial counsel stated this was a tactical decision due to the defendant's prior conviction for aggravated burglary, which the trial court held would be admissible if the defendant testified.

The trial court and trial counsel then engaged in the following colloquy:

THE COURT: . . . Did the defendant waive his right to testify on the record, or by a separate written statement?

TRIAL COUNSEL: I do not believe it was a separate written statement, Your Honor. If he waived it, it would have been - - should have been on the record.

THE COURT: Do you know whether or not he testified off the record - - excuse me - - if he waived his right to testify on the record?

TRIAL COUNSEL: I do not recall, Your Honor.

THE COURT: I don't think he did.

During closing arguments at the motion for new trial, the defendant's new attorney stated the defendant did not waive his right to testify on the record. When the trial court identified his failure to raise the issue in his motion for new trial, the defendant's attorney replied the issue was relevant only to illustrate the diminished relationship between trial counsel and the defendant and the ineffectiveness of trial counsel. As a result, the trial court made no findings of fact as to whether the defendant voluntarily and knowingly waived his right to testify at trial.

## C. Analysis

Because the defendant failed to address the issue in his motion for new trial, we must first find plain error before we can address the issue. An error which has affected the substantial right of a defendant may be noticed at any time in the discretion of the appellate court where necessary to do substantial justice. State v. Taylor, 992 S.W.2d 941, 944 (Tenn. 1999). "Plain error" or "fundamental error" is recognized under Tennessee Rule of Criminal Procedure 52(b). State v. Adkisson, 899 S.W.2d 626, 639 (Tenn. Crim. App. 1994). Some errors are so fundamental and pervasive that they require reversal without regard to the facts or circumstances of the particular case. Delaware v. Van Arsdall, 475 U.S. 673, 681, 106 S. Ct. 1431, 1436, 89 L. Ed. 2d 674 (1986).

The right of a criminal defendant to testify at trial is a fundamental constitutional right, which may only be personally waived by the defendant. Momon v. State, 18 S.W.3d 152, 161 (Tenn. 1999). This court has previously determined that

> . . . the failure to conduct a hearing pursuant to Momon to determine whether the Defendant did personally waive his right to testify was plain error. As such, the failure of the Defendant to raise this issue in a motion for a new trial does not preclude this Court from considering the issue. *See* Tenn. R. Crim. P. 52(b).

State v. William Robert Posey, No. E2001-02665-CCA-R3-CD, 2002 Tenn. Crim. App. LEXIS 727, at *18 (Tenn. Crim. App. Aug. 26, 2002, at Knoxville).

In order to ensure that defense attorneys do not make unilateral decisions regarding a defendant's right to testify, the Tennessee Supreme Court has set out the following procedures:

At any time before conclusion of the proof, defense counsel shall request a hearing, out of the presence of the jury, to inquire of the defendant whether the defendant has made a knowing, voluntary, and intelligent waiver of the right to testify. This hearing shall be placed on the record and shall be in the presence of the trial judge. Defense counsel is not required to engage in any particular litany, but counsel must show at a minimum that the defendant knows and understands that:

(1) the defendant has the right not to testify, and if the defendant does not testify, then the jury (or court) may not draw any inferences from the defendant's failure to testify;

(2) the defendant has the right to testify and that if the defendant wishes to exercise that right, no one can prevent the defendant from testifying;

(3) the defendant has consulted with his or her counsel in making the decision whether or not to testify; that the defendant has been advised of the advantages and disadvantages of testifying; and that the defendant has voluntarily and personally waived the right to testify.

Momon, 18 S.W.3d at 162. In the alternative, a defendant may properly waive the right to testify by signing a written waiver reflecting the defendant's understanding of the above-listed rights. *Id.* at 175.

Defense counsel and trial courts "should adhere to these procedural guidelines in all cases tried or retried after the date of this decision." *Id.* at 163. However, the mere failure to follow the guidelines is not necessarily determinative if the evidence establishes the defendant otherwise personally waived the right to testify. *Id.* The final opinion in Momon was filed on March 30, 2000; thus, it clearly applied to the trial of this case in December 2001.

In the case at bar, the record reflects that a Momon hearing was not held prior to the close of proof to determine whether the defendant personally waived his right to testify. As previously noted, the right to testify is a fundamental constitutional right, which the defendant must personally waive. *Id.* at 161. Therefore, we conclude the failure to conduct a Momon hearing to determine whether the defendant personally waived his right to testify constitutes plain error. William Robert Posey, 2002 Tenn. Crim. App. LEXIS 727, at *18.

The testimony of the defendant appears contradictory to the testimony of trial counsel as to whether the defendant personally waived his right to testify at trial. Therefore, we must remand the case to the trial court for a full hearing on the issue. On remand, the trial court shall follow the same guidelines this court set forth in William Robert Posey. *See id.*, at **19-21.

-8-

## III. CONCLUSION

In summary, we conclude the defendant has failed to establish that he received ineffective assistance of counsel at trial with regard to the investigation and calling of witnesses.  However, we conclude the failure to conduct a <u>Momon</u> hearing to determine whether the defendant personally waived his right to testify at trial constitutes plain error.  Therefore, we remand to the trial court for a full hearing and determination of whether the defendant personally waived his right to testify, and, if not, whether any violation of this right was harmless beyond a reasonable doubt.  The defendant retains the right to appeal an adverse ruling.

_____

JOE G. RILEY, JUDGE